**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**

RICHARD RABINOWITZ,
individually and on behalf of all
others similarly situated,                                                  **CLASS ACTION**

*Plaintiff*,                                                                         **JURY TRIAL DEMANDED**

v.

CHIPOTLE MEXICAN GRILL, INC.
CHIPOTLE SERVICES, LLC, AND
CHIPOTLE MEXICAN GRILL OF
COLORADO, LLC,

*Defendants*.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Richard Rabinowitz, brings this class action against Defendants, Chipotle Mexican Grill, Inc. (and its subsidiaries Chipotle Services, LLC, and Chipotle Mexican Grill of Colorado, LLC) (referred to collectively, "Defendants" or "Chipotle"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Aimed at protecting consumer privacy, the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") prohibits the use of "automatic telephone dialing systems" to call cellular telephones. The TCPA bans nonemergency "robocalls" i.e. telephone calls placed through an automatic telephone dialer system, to cellular telephones unless the recipient expressly consents to receive those calls, including automatically sent text messages.

2.      On or about November 17, 2017, Plaintiff Richard Rabinowitz ("Plaintiff") began

receiving unsolicited autodialed text messages on his cellular telephone, which were placed by or on behalf of Defendants. The text messages were sent as part of a marketing campaign, the purpose of which was to advertise Defendants' products and ordering services to a large number of potential customers in a short period of time.

3.      In efforts to increase the frequency of causing their cash registers to "ring," Defendants made consumers' cellular phones ring by sending illegal marketing text messages providing different types of "deals," "discounts" and "savings" for goods sold by Defendants without first obtaining express written consent to send such marketing text messages as required to do so under the TCPA.

4.      Upon information and belief, these messages were sent using mass-automated technology through a third-party company hired by Defendants to send marketing text messages on Defendants' behalf *en masse*.

5.      In sum, Defendants knowingly and willfully violated the TCPA, causing injuries to Plaintiff and members of the putative class, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6.      Through this putative class action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## **JURISDICTION AND VENUE**

7.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a nationwide class, which will result in at least one class member belonging to a different state than

Defendants. Plaintiff seeks up to $1,500.00 in damages for each call (text message) in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their products within this district thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendants have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, subjecting Defendants to jurisdiction here.

## PARTIES

9.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Palm Beach County, Florida.

10.      Defendant Chipotle Mexican Grill, Inc. is a Delaware Corporation with its principal office in Colorado.

11.      Upon information and belief, Defendants Chipotle Services, LLC (formerly known as CMG Service Co., LLC) and Chipotle Mexican Grill of Colorado, LLC are subsidiaries of Chipotles Mexican Grill, Inc., and are Colorado limited liability companies having their principal offices in Denver, Colorado.

12.      Upon information and belief, Defendants own and operate at least 1,500 Chipotle Mexican Grill restaurant locations throughout the United States. Defendants are each registered to do business in, and upon information and belief, operate at least 135 restaurant

locations in the state of Florida.[1]

13.     Chipotle directs, markets, and controls all of its subsidiaries located in the United States including the transmissions of the violating text messages at issue in this case.

14.     At times relevant herein, Defendants conducted business in Florida, solicited business in Florida, engaged in a persistent, common course of conduct in Florida, and have derived substantial revenue from services rendered in Florida.

## THE TCPA

15.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

16.     A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. § 227(b)(3).

17.     The element of "willfulness" is demonstrated by evidence that the defendant

---

[1] *See* Investor Relations, CHIPOTLE, http://ir.chipotle.com/phoenix.zhtml?c=194775&p=irol-homeProfile&t=&id=& (Last Visited: December 12, 2017).

acted deliberately or intentionally rather than merely through negligence.

18.      The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

19.      The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

20.      In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

21.      The Federal Communications Commission ("FCC") is empowered to issue rules and  regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

22.      With respect to telemarketing, 47 C.F.R. § 64.1200(c) provides:

No person or entity shall initiate any telephone solicitation to:

(1) Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location), or

(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-

not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

23.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express <u>written</u> consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

24.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent . . . and [the plaintiff] having received the information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

25.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

26.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

27.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and

transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)).

28.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

29.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

30.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

31.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

32.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No.

14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

## BACKGROUND FACTS

33.     In efforts to increase its business and profits, Defendants would often send marketing text messages providing different types of "offers" and "deals" for future purchases of Defendants' goods, and to promote the use of its mobile applications for faster ordering.

34.     Plaintiff was the recipient of at least five such marketing text messages; all of which were sent without his express written consent.

35.     Plaintiff began receiving these marketing text messages on or about November 2017, to his cellular telephone number, ending in 9444 ( the "9444 Number").

36.     On or about November 17, 2017 at 1:47 PM., the following automated text message was received on the "9444 Number":



37.     On or about December 06, 2017,  Plaintiff received a third text message from

Defendants on the 9444 Number:



38.     On or about December 11, 2017, Plaintiff received a fourth text message on the 9444 Number:



39.     On or about December 18, 2017, a Plaintiff received a fifth message on the 9444 Number:



40.     The link in the first text message promoted the installation of Defendants' new mobile application for iPhone users. If customer installed the application to their iPhone and subsequently placed an order, they would be eligible to receive a free product from Defendants.

41.     The third text message promoted Defendants' catering service and offered a free Queso if the customer ordered Chipotle's catering. Similarly, the fourth message offered free queso if a customer wore a "cheesy" sweater and purchased an entrée from Defendants.

42.     Only two of the five text messages Plaintiff received contained "Text HELP 4help, STOP 2quit" language instructing Plaintiff on how to stop the text messages.

43.     Defendants' text messages constitute telemarketing because they encourage the promotion future purchase and use of Defendants' products and services by individuals such as Plaintiff.

44.     Defendants' text messages were also part of a calculated telemarketing campaign to advertise its new queso dip, because its previous queso dip was largely rejected by customers.[2]

---

[2]   http://money.cnn.com/2017/12/06/news/chipotle-queso-giveaway/index.html   (Last   Visited: December 12, 2017).

For example, on November 17, 2017 Defendants tweeted an almost identical advertisement on Twitter[3]:



45.   Plaintiff received the subject text messages within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district. Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

46.   At no point in time did Plaintiff provide Defendants with his express written consent to be contacted by text for marketing purposes using an ATDS.

47.   Plaintiff is the subscriber and sole user of the 9444 Number.

48.   At all times relevant herein, Plaintiff's cellular telephone number is listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

---

3

https://twitter.com/ChipotleTweets?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor (Last Visited: December 12, 2017).

49.     Some, if not all of the messages originated from the phone number or short-code "888222" which is owned by Defendants.[4]

50.     The impersonal and generic nature of Defendants' text messages demonstrates that Defendants utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132- IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

51.     Specifically, upon information and belief, Defendants, directly, or through a third-party telemarketer, utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendants have the capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

52.     Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life. *See*

---

[4] *See* U.S. SHORT CODE DIRECTORY, https://usshortcodedirectory.com/directory/short-code-888222/ (Last Visited: December 12, 2017).

*Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious."). Plaintiff received the subject text messages while he was at work, causing him to stop his work activities to check his phone. Furthermore, the text messages occupied his phone's memory and their receipt caused a deprivation of battery life.

53.     As outlined above, upon information and belief, Defendants likely employed a third-party company to send the marketing text messages in question to Plaintiff and members of the proposed class and, as such, are vicariously liable for the TCPA violations arising from said text messages.

### Vicarious Liability

54.     Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

55.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

56.     In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)) .

57.     In May of 2013, the FCC reinforced this issue. *See In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* n.107.

58.     The 2013 FCC Order further explained:

> To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

> [ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has

the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call.

*Id.* at ¶¶ 46-47).

59.     Accordingly, it is unambiguously clear that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity, in this case the Defendants, is properly deemed to have initiated the call through the person or entity that actually placed the calls.

### *Willful or Knowing*

60.     If the court finds that a defendant willfully or knowingly violated the TCPA, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of 47 U.S.C. § 227(b)(3).

61.     Upon information and belief, Defendants' third-party telemarketer provided Defendants' with comprehensive information on TCPA compliance, and its rules and regulations.

62.     As such, there is no doubt that Defendants are well aware of the TCPA and its restrictions on automatically dialed telemarketing calls. Therefore, Plaintiff respectfully submits that Defendants' latest round of TCPA violations are nothing less than intentional, willful, and knowing.

### **CLASS ALLEGATIONS**

### *Proposed Classes*

63.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf

of himself and all others similarly situated.

64.     Plaintiff brings this case on behalf of the following Classes:

*The "Telemarketing Class"* All persons within the United States to whom, within the four years prior to the filing of this Complaint, Defendants or any of its subsidiaries, or anyone on Defendants' or their subsidiaries' behalf sent a marketing or promotional text message through the use of any automatic telephone dialing system, to said person's cellular telephone number, not for emergency purpose and without the recipient's prior express written consent.

*The "Do Not Call Class"* All persons within the United States to whom, within the four years prior to the filing of this Complaint, Defendants or any of their subsidiaries, or anyone on Defendants' or their subsidiaries' behalf placed more than one telephone call to said person's cellular telephone number within any 12-month period, without their prior express consent and to which they object, while listed on the national Do Not Call Registry.

*The "Opt-Out Language Class"* All persons within the United States to whom, within the four years prior to the filing of this Complaint, Defendants or any of their subsidiaries, or anyone on Defendants' or their subsidiaries' behalf placed more than one telephone call to said person's cellular telephone number within any 12-month period, without their prior express consent that was not provided the opt-out language required by law.

65.     Plaintiff is a member of all three classes.

66.     Defendants and their employees or agents, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class members number in the thousands, if not more.

*Numerosity*

67.     Upon information and belief, Defendants have placed automated calls to cellular

telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of each Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

68.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### Common Questions of Law and Fact

69.     There are numerous questions of law and fact common to each Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a)   Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

b)   Whether any of such calls were made to persons whose cellular telephone number is listed on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

c)   Whether Defendants' calls or text messages had a telemarketing purpose

d)   Whether Defendants can meet their burden of showing that they obtained prior express consent to make such calls, or written consent when applicable;

e)   Whether Defendants conduct was knowing and willful;

f)   Whether Defendants are liable for damages, and the amount of such damages; and

g)   Whether Defendants should be enjoined from such conduct in the future.

70.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to

cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### *Typicality*

71.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### *Protecting the Interests of the Class Members*

72.     Plaintiff is a representative who will fully and adequately assert and protect the interests of both Classes, and has retained competent counsel to assist in doing so. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

### *Superiority*

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes are economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

74.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

75.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

76.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . .  to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

77.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, *In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

78.     Defendants – or third parties directed by Defendants– used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

79.     These calls were made without regard to whether Defendants had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

80.     Defendants therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make marketing telephone calls to the cell phones of Plaintiff and Class Members without their prior express written consent.

81.     All Defendants are directly, jointly, or vicariously liable for each such violation

of the TCPA.

82.     As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

83.     If Defendants' conduct is found to be willful or knowing, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II
### Violation of 47 C.F.R. §64.1200(c)
### (On Behalf of Plaintiff and the Do Not Call Class)

84.     Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

85.     Defendants – or third parties directed by Defendants, for telemarketing purposes, placed multiple automated text messages to persons whose cellular telephone numbers are listed on the national do-not-call registry of persons who do not wish to receive telephone solicitation.

86.     Plaintiff and the other members of the Class received more than one telephone call within any 12-month period, by or on behalf of the Defendants, without their prior express consent and to which they object.

87.     Defendants therefore, violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to person who have registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations.

88.     All Defendants are directly, jointly, or vicariously liable for each such violation

of the TCPA.

89.     As a result of Defendants conduct and pursuant to 47 C.F.R. 64.1200(c), Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

### COUNT III
### Violation of 47 C.F.R. §64.1200(b)(3)
### (On Behalf of Plaintiff and the Opt-Out Language Class)

90.     Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

91.     Defendants – or third parties directed by Defendants, for telemarketing purposes, placed multiple automated text messages to persons whose cellular telephone numbers call and text message telephone numbers assigned to cellular telephones that do not contain key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism; within two (2) seconds of providing the identification information.

92.     Plaintiff and the other members of the Class received telemarketing text messages that did not contain any language or a key activated opt-out mechanism for the called person to make a do-not-call request.

93.     Defendants therefore, violated 47 C.F.R. § 64.1200(b)(3) by initiating telephone telemarketing text messages to individuals that do not contain key press-activated opt-out mechanism.

94.     All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

95.     As a result of Defendants conduct and pursuant to 47 C.F.R. 64.1200(b)(3), Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

a) An order certifying the three Classes as previously described herein;

b) A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the applicable rules promulgated thereunder;

c) A declaration that Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the applicable rules promulgated thereunder were willful and knowing;

d) An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

e) An injunction prohibiting Defendants from making calls and text messages to numbers assigned to the national do not call registry;

f) An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones that do not contain key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism;

g)  An award of actual, statutory damages, and/or trebled statutory damages; and

h)  Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

Dated: December 21, 2017

Respectfully submitted,

By: */s/ Scott D. Owens*
Scott D. Owens
Scott D. Owens, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com